IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____

```
-------------------------------------------------------)
JORGE HERRERA,                                         )
                                                       )
                Plaintiff,                             )
                                                       )
        v.                                             )
                                                       )
MEGA MEDIA HOLDINGS, INC.,                             )
AND JOHN OR JANE DOES 1-10                             )
                                                       )
                Defendants.                            )
-------------------------------------------------------)
```

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**JORGE HERRERA** ("Plaintiff"), by and through its undersigned attorneys, for its complaint against **MEGA MEDIA HOLDINGS, INC.** ("MEGA"), and **JOHN** or **JANE DOES** 1-10, avers:

### NATURE OF THE ACTION

1. This is an action for damages and injunctive relief arising under the copyright and unfair competition laws of the United States as well as state laws on unfair competition.

2. Defendants have engaged in unlawful acts by copying and distributing Plaintiff's film, a work of authorship entitled CLUB HABANA (the "Work") and other works or authorship. Defendants have distributed and used these unlawfully copied works (the "Unlawful Copies") to directly compete with Plaintiff in the same type of business, creating likelihood of confusion. These acts constitute copyright infringement and unfair competition.

### JURISDICTION AND VENUE

3. This Court has jurisdiction under 17 U.S.C. § 101 et seq.; 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over the Defendants, and venue in this District is proper, under 28 U.S.C. §§ 1391(b) and 1400(a), because a substantial part of Defendants' acts of infringement complained of occurred in this District.

5. Jurisdiction over the state causes of action is conferred upon this Court pursuant to 28 U.S.C. §§ 1338 and 1367 because there is a common nexus of operative facts giving rise to the substantial federal claims. Judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises its subject matter jurisdiction over all causes of action alleged herein.

## PARTIES

6. Plaintiff is an individual who is sui juris.

7. Defendant MEGA is a Florida corporation with its principal place of business in Miami-Dade County and operates a Spanish-language TV channel, MEGA TV.

8. Defendants JOHN or JANE DOES 1-10 are currently unidentified individuals who were or are the active, conscious moving forces behind the unlawful acts of MEGA and MARAKKA complained of herein.

## NON-PARTIES PLAYING A ROLE IN THE CASE

9. MARAKKA 2000 INC**. ("MARAKKA")** is a dissolved Florida corporation and currently an unknown juridical entity with its principal place of business in Miami-Dade County.  Plaintiff has obtained a judgment in a separate case against MARAKKA,

2

10. WALDO FERNANDEZ ("FERNANDEZ") is *sui juris* and an officer, director, or agent of MARAKKA. Plaintiff has obtained a judgment in a separate case against FERNANDEZ.

## BACKGROUND

11. Plaintiff is a film director, screenwriter, and producer of various dramatic films critically depicting current-day Cuban society and the shortcomings of the Cuban regime. A German national of Cuban origin, he resides in Germany, a signatory of the Berne Convention. As such, he is not required to register his works of authorship with the U.S. Copyright Office to enforce his rights in the United States. He did, however, register his work *Club Habana* in the U.S. Ex. 1.

12. Among the films where Plaintiff owns a copyright interest are *90 Millas* ("90 Miles," a reference to the shortest distance between Cuba and Key West), *Entre dos aguas* ("Between Two Waters") and *Club Habana*.

13. Plaintiff's films feature Cuban-born or visiting Cuban actors and include scenes shot in Cuba, Spain and other Spanish-speaking nations, lending an air of authenticity to the works and reflecting the unique style of the director. His films are typically shown on theaters in Spain, Latin America, and the United States. As is the case with most serious films, they are released on DVDs only after they have had their theater runs.

14. On or about December 2011, Plaintiff learned that his latest film, *Club Habana*, had been shown in Defendant's MEGA TV channel. Plaintiff was very surprised because the film had not yet been released. As such, it should not have been shown on TV or distributed on DVDs, BlueRay or other media until the end of its theater run. In

3

other words, the Defendant MEGA took it upon itself to show the world premiere of Club Habana without the benefit of license or permission from Plaintiff.

15. The lawful premiere of *Club Habana*, in fact, was slated to occur in Miami at a local theater beginning February 10, 2012.

16. Plaintiff's representative in Miami, Mr. Roy Rogers, inquired about this blatant violation of Plaintiff's intellectual property rights with executives of MEGA, who washed their hands of the whole affair. They claimed that MEGA, whose programming regularly includes many films made in Cuba or touching upon Cuba and are believed to be shown without license from the copyright owners, had a contract with MARAKKA, a company that is in the business of distributing DVDs, and that this company was bound by an indemnity and hold harmless provision with respect to any violation of intellectual property rights.

17. For this and other reasons, Plaintiff is informed and believes that Defendant MEGA is and was fully aware that it has willfully infringed and continues to infringe the rights not only of Plaintiff, but other film copyright owners, thus circumventing the need to pay appropriate royalties to Plaintiff for exclusivity and the rights to the world TV premiere.

18. This most recent instance of copyright infringement was not the first harm suffered by Plaintiff at the hands of MARAKKA and FERNANDEZ.  In 2005, Plaintiff was involved in the earlier Cuban-themed movie produced in Spain, *90 Millas*, as screenwriter, actor and associate producer.

4

AMAURY CRUZ, P.A. – THE LEXARIAN® FIRM
1560 LENOX AVENUE, SUITE 207, MIAMI BEACH, FL • TELEPHONE (305) 604-2051 • FACSIMILE (305) 604-2011

19. After its premiere in Madrid, the film was a great commercial success and was eventually shown on such major cable channels as HBO, Cinemax and Venevision International.  At some point, it appears that FERNANDEZ unlawfully burned a DVD from the Venevision showing and started to sell copies for a relatively low price, unlawfully and unfairly competing with the Plaintiff and others who own the rights to the work.  Consequently, the film has not been declared to any legitimate royalty-collecting organization and Plaintiff has been unable to receive royalty payments from SGAE (*Sociedad General de Autores de España*), the Spanish equivalent of the American Society of Composers, Authors and Publishers, for his role as screenwriter.

20. Three years later, in 2008, Plaintiff filmed another Cuban-themed movie, *Entre dos aguas*, which was completely financed and produced in Germany.

21. Once again, FERNANDEZ somehow procured a copy of the film and started to sell it on DVDs out of several Miami stores and online, starting in 2009 and continuing to the present.  Because this was a copy of an unfinished, director's uncut version, audiences and critics were misled into thinking that the flaws in this version were the result of Plaintiff's ineptitude.

22. Making matters worse, the movie cover stated it had Dolby sound when in fact Plaintiff had not yet processed the sound in a Dolby laboratory.  Despite this, the film became very popular.  However, as a consequence of FERNANDEZ's and MARAKKA's actions, Plaintiff  was unable to properly edit the film and lost all possibility of commercializing it, resulting in a significant monetary loss.

5

23. Plaintiff is informed and believes that MEGA acquired from FERNANDEZ bootleg copies of both *90 Millas* and *Entre Dos Aguas* and showed them in its TV Channel, Mega TV.

24. Plaintiff, mistakenly thinking that Defendant FERNANDEZ could be persuaded to cease his infringing activities, wrote Defendant a letter on November 3, 2008, complaining about his actions. Instead of complying, FERNANDEZ defiantly made a number of specious arguments and had the temerity to publish the Plaintiff's letter (as well as his private e-mail address) in a blog, accompanied by FERNANDEZ's commentaries.

25. Among other things, FERNANDEZ claimed in his blog that Cuba pirates television and films from other parts of the world and therefore he had the right to do the same thing with Plaintiff's work of authorship. Without knowing anything about the person of Plaintiff, ignoring the critical nature of his films toward Cuban society and government, and in reckless disregard for the truth, including the fact that Plaintiff's films are banned in Cuba, FERNANDEZ suggested by innuendo that Plaintiff was a Castro-sympathizing filmmaker who has special privileges in that island nation, and accused Plaintiff of criminal violations of the U.S. embargo against Cuba.

26. A few years later, Plaintiff produced and directed the film now at issue, *Club Habana*, which was financed completely with German and Ecuadoran funds and is also forbidden in Cuba.

27. Plaintiff is informed and believes that MEGA procured a pirated version of *Club Habana* from FERNANDEZ.

6

28. MEGA knew or should have known that FERNANDEZ had provided a pirated film because FERNANDEZ is well known in the community as a purveyor of such films and even boasted about it at least once in an interview broadcast in MEGA's own TV channel.

29. As result of FERNANDEZ's piracy of this film in the form of online sales and cheap DVDs which undercut legitimate sales, and the playing of the film in MEGA's TV Channel, prior to its scheduled release in theaters, Plaintiff has been prevented from commercially exploiting it in theaters in the United States.

30. Neither can Plaintiff market it to cable channels, which typically want exclusive rights, or to sell it in DVDs, as no major DVD distributor wants a film that is already being marketed by others or shown on TV.  In addition, by making the film available for download and showing on television, it facilitates the circulation of additional pirated copies, so that few potential buyers would be willing to pay for it.

31. In fact, due to FERNANDEZ's unlawful copying and distribution and MEGA's exhibition over the airwaves, the illegal copies of the film *Club Habana* are on sale in the streets of Havana bearing Defendant MEGA's trademark, and has been pirated by additional parties, which have sold it in the form of DVDs or for downloads at various websites, including the following:

http://www.tvcubana.tv/index.php?tid=3&cat_id=0#ontitle

http://www.peliculascubanas.net/?pID=195

http://www.cinematecacubana.com/scripts/prodView.asp?idproduct=1984.

7

32. In addition, FERNANDEZ once again has sold, distributed, or exhibited and continues to sell an unfinished copy of Plaintiff's film, therefore robbing the Plaintiff of final creative control and suggesting to the viewers that Plaintiff lacks filmmaking polish. Among other things, certain scenes and dialogues have been removed so that later scenes sometimes make no sense.

33. MEGA's showing of the adulterated version of the film on television similarly robbed the Plaintiff of final creative control and suggested to the viewers that Plaintiff lacks filmmaking polish.

34. Finally, by being forced to cancel the film's official scheduled theater release as a consequence of FERNANDEZ's unlawful sales and distribution, as well as MEGA's unauthorized showing of the film on television, Plaintiff has been denied the opportunity to hold news conferences and interviews that were to take place beginning January 20, 2012, to provide publicity for the film.

35. It is noteworthy that Defendant FERNANDEZ claimed in his response to Plaintiff's correspondence that he had won 27 lawsuits in connection with the sales of his pirated DVDs. A docket search shows that FERNANDEZ has been actually sued twice by other film distributors or producers in the Southern District of Florida and that there is a significant judgment for damages against him. (A second lawsuit seems to have been settled.) It appears not only that FERNANDEZ is a boastful serial infringer, and one who has not learned his lesson.

36. It also appears that MEGA either knew or willfully ignored FERNANDEZ's well-known history as a copyright pirate in the field of Cuba-themed films.

8

AMAURY CRUZ, P.A. – THE LEXARIAN® FIRM
1560 LENOX AVENUE, SUITE 207, MIAMI BEACH, FL • TELEPHONE (305) 604-2051 • FACSIMILE (305) 604-2011

## COUNT ONE
## COPYRIGHT INFRINGEMENT

37. Plaintiff incorporates by reference each and every averment set forth in paragraphs 1 through 37 above.

38. Plaintiff is, and at all relevant times has been, the copyright owner of the Work identified in Exhibit 1 attached hereto, which is the subject of the valid Certificate of Copyright Registration No. Pau003583389 issued by the Register of Copyrights.

39. Among the exclusive rights granted to Plaintiff under the Copyright Act under 17 U.S.C. § 102 and 103 are the rights to reproduce the Work, to create derivative works, and to distribute and perform the Work to or before the public.

40. Plaintiff is informed and believes that Defendant MEGA, through its officers, directors, agents or employees, without permission or consent of Plaintiff, copied and performed the Work and continues to copy and perform the Work before the public.  In doing so, the Defendants have infringed Plaintiff's exclusive rights.

41. Plaintiff is informed and believes that unknown persons have supervised and continue to supervise the copying and performance of the Work before the public while also reaping financial benefits from these infringing activities.  Accordingly, these unknown persons, referred to herein as John and Jane Does, are jointly liable for the infringement.

42. Plaintiff is informed and believes that the foregoing acts of infringement by MEGA and its officers, agents or employees, have been willful and intentional, in disregard of and with indifference to the rights of Plaintiff.

9

AMAURY CRUZ, P.A. – THE LEXARIAN® FIRM
1560 LENOX AVENUE, SUITE 207, MIAMI BEACH, FL • TELEPHONE (305) 604-2051 • FACSIMILE (305) 604-2011

43. As a result of Defendant's infringement of Plaintiff's exclusive rights under copyright law, Plaintiff is entitled to actual damages, or statutory damages pursuant to 17 U.S.C. §504(c) for Defendants' infringement.  Plaintiff is further entitled to its attorney's fees and costs pursuant to 17 U.S.C. §505.

44. The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot be fully compensated or measured in money.

45. Plaintiff has no adequate remedy at law.

46. Pursuant to 17 U.S.C. §502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyright, and ordering Defendants to destroy all copies of the work made in violation of Plaintiff's exclusive rights.

WHEREFORE, Plaintiff prays that:

(1) Defendants, their officers and directors, agents, employees, and servants be enjoined during the pendency of this action and permanently thereafter from infringing said copyright of Plaintiff in any manner, and from publishing, selling, marketing or otherwise disposing of any copies of the infringing material;

(2) Defendants be ordered to pay to Plaintiff all such damages, with prejudgment interest, as Plaintiff has sustained in consequence of Defendants' infringement of said copyrighted work and to account for and pay to Plaintiff all gains, profits, and advantages derived by Defendants by

10

AMAURY CRUZ, P.A. – THE LEXARIAN® FIRM
1560 LENOX AVENUE, SUITE 207, MIAMI BEACH, FL • TELEPHONE (305) 604-2051 • FACSIMILE (305) 604-2011

their infringement of Plaintiff's copyright or such damages as appear proper to the Court within the provisions of the copyright statutes, or in the alternative to pay statutory damages;

(3) Defendants be required to deliver up to be impounded during the pendency of this action all copies of infringing materials in their possession or under their control and to deliver up for destruction all infringing copies and all plates, molds, and other matter for making such infringing copies;

(4) Defendants pay to Plaintiff the costs of this action and reasonable attorney's fees to be allowed to the Plaintiff by the Court; and

(5) Plaintiff has such other and further relief as is just and proper.

## COUNT TWO
## FLORIDA UNFAIR COMPETITION

47. Plaintiff incorporates by reference each and every averment set forth in paragraphs 1 through 37 above.

48. MEGA competes with Plaintiff in the market of film distribution or performance.

49. The Work is the result of significant time, labor, and money expended by Plaintiff in an effort to obtain a competitive advantage in the market.

50. Defendants have engaged in acts which constitute unfair competition under the laws of the State of Florida.  Specifically, Plaintiff is informed and believes that MEGA induced and materially contributed to the theft of the Work and other films written or

11

AMAURY CRUZ, P.A. – THE LEXARIAN® FIRM
1560 LENOX AVENUE, SUITE 207, MIAMI BEACH, FL • TELEPHONE (305) 604-2051 • FACSIMILE (305) 604-2011

produced by Plaintiff, or conspired with FERNANDEZ or MARAKKA to benefit from such thefts.

51. Plaintiff is informed and believes that MEGA unlawfully obtained Plaintiff's Work for its unscrupulous uses in MEGA's business to obtain a competitive advantage for its products and services in the specialized niche market in which the Parties do business, all without the Plaintiff's consent.

52. The Plaintiff has been damaged as a direct result of the Defendants' actions.

WHEREFORE, Plaintiff prays that:

(1) Defendants, their officers and directors, agents, employees, and servants be enjoined during the pendency of this action and permanently thereafter from contributorily infringing or otherwise inducing others to infringe said copyright of Plaintiff in any manner, and from publishing, selling, marketing or otherwise disposing of any copies of the infringing material;

(2) Defendants be ordered to pay to Plaintiff all such damages, with prejudgment interest, as Plaintiff has sustained in consequence of Defendants' unfair competition and to account for and pay to Plaintiff all gains, profits, and advantages derived by Defendants by their unlawful acts;

(3) Defendants be required to deliver up to be impounded during the pendency of this action all copies of infringing materials in their possession or under their control and to deliver up for destruction all

12

AMAURY CRUZ, P.A. – THE LEXARIAN® FIRM
1560 LENOX AVENUE, SUITE 207, MIAMI BEACH, FL • TELEPHONE (305) 604-2051 • FACSIMILE (305) 604-2011

> infringing copies and all plates, molds, and other matter for making such infringing copies;
>
> (4) Defendants pay to Plaintiff the costs of this action and reasonable attorney's fees to be allowed to the Plaintiff by the Court; and
>
> (5) Plaintiff has such other and further relief as is just and proper.

## COUNT THREE
## UNFAIR COMPETITION UNDER SECTION 43(A) OF THE LANHAM ACT

53. Plaintiff incorporates by reference each and every averment set forth in paragraphs 1 through 37 above.

54. MEGA and unknown persons who are directors, officers, employees or agents of MEGA placed MEGA's own distinctive term and design on the adulterated versions of the accused films, creating likelihood of confusion, or causing mistake, or deceiving as to affiliation, connection or association with the Plaintiff, as to the origin, sponsorship, or approval of Defendants' services or commercial activities by the Plaintiff in violation of Section 43(A) of the Lanham Act, 35 U.S.C. § 1125.

55. MEGA, in commercial advertising and promotion, misrepresented the nature, characteristics or qualities of Plaintiff's Work, in violation of Section 43(A) of the Lanham Act, 35 U.S.C. § 1125.

56. MEGA has engaged in false designations of origin and false descriptions of Plaintiff's Work.

57. MEGA has engaged in acts of unfair competition and unlawful trading on Plaintiff's good will and the public's acceptance of Plaintiff's Work.

13

58. MEGA's unlawful acts have caused irreparable damage to Plaintiff.

WHEREFORE, Plaintiff prays that:

(1) Defendants, their officers and directors, agents, employees, and servants be enjoined during the pendency of this action and permanently thereafter from unfairly competing with Plaintiff through violations of Section 43(A) of the Lanham Act;

(2) Defendants be ordered to pay to Plaintiff all such damages, with prejudgment interest, as Plaintiff has sustained in consequence of Defendants' unfair competition and to account for and pay to Plaintiff all gains, profits, and advantages derived by Defendants by their unlawful acts or such damages as appear proper to the Court within the provisions of the copyright statutes, or in the alternative to pay statutory damages;

(3) Defendants be required to deliver up to be impounded during the pendency of this action all copies of infringing materials in their possession or under their control and to deliver up for destruction all infringing copies and all plates, molds, and other matter for making such infringing copies;

(4) Defendants pay to Plaintiff the costs of this action and reasonable attorney's fees to be allowed to the Plaintiff by the Court; and

(5) Plaintiff has such other and further relief as is just and proper.

    Respectfully submitted,

AMAURY CRUZ, P.A. – THE LEXARIAN® FIRM
1560 LENOX AVENUE, SUITE 207, MIAMI BEACH, FL • TELEPHONE (305) 604-2051 • FACSIMILE (305) 604-2011

By:  /s Amaury Cruz
    Amaury Cruz, Esq.
    Fla. Bar No. 898244

    AMAURY CRUZ, P.A.
    Attorneys for Plaintiff
    1560 Lenox Avenue, Suite 207
    Miami Beach, FL 33139
    Telephone: (305) 604-2051
    Fax: (305) 604-2011
    Email: lex@lexarian.com

15

AMAURY CRUZ, P.A. – THE LEXARIAN® FIRM
1560 LENOX AVENUE, SUITE 207, MIAMI BEACH, FL • TELEPHONE (305) 604-2051 • FACSIMILE (305) 604-2011